# IN THE COURT OF APPEALS OF IOWA

No. 21-0680
Filed November 23, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ZACHARY LIDDICK,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Mills County, Craig Dreismeier, Judge.

Zachary Liddick appeals the sentence imposed for his conviction for attempted murder. **SENTENCE VACATED IN PART AND REMANDED WITH DIRECTION.**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

Zachary Liddick appeals the sentence imposed for his conviction for attempted murder. We vacate in part and remand for a corrected sentencing order.

**I. Background Facts and Proceedings.**

Liddick was seventeen years old when he exchanged words with a sixteen-year-old stranger and then approached the stranger and shot him in the abdomen. Liddick pleaded guilty to attempted murder. The district court accepted the plea. At sentencing, the parties agreed the court could consider a recent forensic juvenile psychological assessment report prepared by Theodore J. DeLaet, Ph.D. and the reverse waiver report prepared by a juvenile court officer. Both reports explore Liddick's tumultuous family background, substance-abuse issues, and already lengthy criminal-offense history. Dr DeLaet also explored Liddick's mental-health background and performed a number of psychological assessments, resulting in several diagnoses.

The court reviewed the five sentencing factors applicable to juvenile offenders and imposed a twenty-five year sentence of imprisonment, with a seventy-percent mandatory minimum, and a $5000 fine, which was suspended. Liddick challenges the mandatory minimum sentence, arguing the district court did not properly apply the factors applicable to juvenile offenders. He also asserts the fine imposed is illegal.

**II. Scope and Standard of Review.**

"We review 'the trial court's application of pertinent sentencing statutes for correction of errors at law.'" *State v. Calvin*, 839 N.W.2d 181, 184 (Iowa 2013) (citation omitted). "Sentencing decisions of the district court are cloaked with a

strong presumption in their favor." *State v. Crooks*, 911 N.W.2d 153, 171 (Iowa 2018). "If the sentence imposed is within the statutory limits . . . we review for an abuse of discretion." *State v. Majors*, 940 N.W.2d 372, 385 (Iowa 2020). An abuse of discretion occurs "[w]hen the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable." *State v. Thompson*, 856 N.W.2d 915, 918 (Iowa 2014). As explained in *State v. Roby*,

> A discretionary sentencing ruling . . . may be [an abuse of discretion] if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

897 N.W.2d 127, 138 (Iowa 2017) (second alteration in original) (citation omitted).

## III. Mandatory Minimum.

Our supreme court has concluded mandatory minimum sentences may not be imposed on a juvenile offender without an individualized sentencing proceeding and the court's consideration of these factors:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*State v. Lyle*, 854 N.W.2d 378, 404 n.10 (Iowa 2014) (quoting *Miller v. Alabama*, 567 U.S. 460, 477 (2012)); *accord Majors*, 940 N.W.2d at 386 (Iowa 2020) ("Our decisions have clarified that the sentencing court must consider the *Miller/Lyle/Roby* factors in an individualized sentencing hearing if it is

contemplating imposing a mandatory minimum sentence on a juvenile offender.").

As our supreme court explained in *Roby*:

> First, the factors generally serve to mitigate punishment, not aggravate punishment. Second, juvenile sentencing hearings are not entirely adversarial. The goal is to craft a "punishment that serves the best interests of the child and of society." Third, the default rule in sentencing a juvenile is that they are not subject to minimum periods of incarceration.

897 N.W.2d at 144 (citations omitted).

Dr. DeLaet incorporated a discussion of the relevant factors in the psychological assessment and report.

> *1. Age and Features of Youthful Behavior:*
> [Liddick] recently turned eighteen and so he [is] several years away from turning age twenty-five. A question to be considered by this writer and the courts would be whether [Liddick] is a typical [eighteen]-year-old in terms of judgment capacity. As indicated by his intelligence test scores and other psychological factors, he has under-developed capacity for understanding and judgment as laid out in the preceding sections compared to same-age youth.
> This is not to say that he did not know right from wrong at the time of his offense. This writer also notes the significant role of substance impairment on his quality of judgment at the time and the role of peer influence on the collective behavior of the three individuals
> *2. Family and Home Environment:*
> [Liddick] has had significant family turmoil and disruption. He had a poor relationship with his father and noted that his father recently committed suicide. He has had a difficult time, particularly since the age of [thirteen], at staying out of detention centers, jails, and being in higher levels of care/out of home placements. He was living with his mother at the time of his offense but appeared to be poorly managed in that environment. Generally speaking, in terms of having effective parenting role models, parental protection, etc. [Liddick] has had a significantly problematic family and home environment during his upbringing.
> [Liddick] has a number of psychological traits and characteristics comparable to youth who have issues of neglect, abandonment, and/or abuse. He was generally somewhat indifferent in describing his relationship with his mother.
> *3. Circumstances of the Crime:*
> This writer reviewed the Minutes of Testimony . . . . Included in the document is an interview of the identified [sixteen]-year-old

victim and the now [eighteen]-year-old male who was in the car with [Liddick] on the date of the incident. Interviews of law enforcement officers involved in the investigation of the shooting were also included.

The victim told investigators that [Liddick] shot him with a pistol. He reported he did not know the person who shot him.

The other male in the car with [Liddick], referred to here as CS, claimed [Liddick] was the person who shot the victim and had the gun used in the shooting. He described [Liddick] as "angry" and told him he wanted to shoot someone that day. A female peer was also with them, identified here as KT. CS claimed it was [Liddick] who started the verbal altercation with two teenagers on the sidewalk. After one of the two said something back to [Liddick], he had the car stopped. He exited the car and shot the youth who had said something.

. . . .

*4. Legal Incompetency:*

. . . [Liddick] does have limited cognitive abilities and limited problem-solving abilities as evidenced by his Intellectual Disability diagnosis. Assessing what [Liddick] understands and appreciates about the court process or any instructions that he is given will have to be assessed to make sure he has an adequate understanding. . . . There was a negative influence on judgment and decision making due to his reported consumption of substances on the date of his offense. Said differently, this writer understands that substance use impairment could not be used as a diminished capacity defense.

*5. Rehabilitation:*

This is defined in the [*Roby*] case as "the possibility of rehabilitation and capacity for change." [Liddick] has a multiple year history of having poor response to treatment. As indicated by the RSTI scores, he has poor amenability to treatment. He has failed or dropped out of multiple treatments and stopped medications on his own at age [thirteen]. His prognosis for rehabilitation would be guarded-to-poor. He will need assistance via structured treatment program adjusted to his intellectual abilities, so that he can make meaningful changes in his life. He appeared more somber and somewhat remorseful on the date of assessment. Based on all available factors such as maturity, complexity, treatment amenability, and dangerousness, [Liddick] would be a poor candidate for community release. His risk of noncompliance or dropping out of treatment is high. His substance use relapse risk is currently high. His risk to seek out relationships with persons where substance use and/or criminal activity is common is high based on his history. He appears to have some current desire to want to get better but has very limited understanding or appreciation of [how] to get better and improve his life. His poor academic progress in school is further indication of his poor rehabilitation potential.

The sentencing court considered each of the five factors, addressed what he considered "noteworthy" in Dr. DeLaet's report observations, and stated:

> So I think it's appropriate for those factors to be reflected upon. But as noted by counsel in regard to the case law itself, although imposing a mandatory minimum for a juvenile offender is generally not preferred but the court clearly does have that ability to do that after considering what factors we would consider for any other sentence in regards to considering public safety, deterrence, retribution, how you've impacted everyone's lives in regards to this case cannot be minimized as well and I do not minimize any of that in regards to the sentence that I am about to impose.
>
> I have given this careful consideration based upon the information that has been presented to me. I do think that there are some factors that probably weigh against a mandatory minimum sentence for you. However, this isn't an exhaustive list. This is a consideration by the court in regards to what should happen in regards to you moving forward and primarily the concerns that I have weigh in regards to your past prior failures in following through with treatment. Perhaps this is just something that's related to what is going on in your head and not being fully developed and functioned and being able to make the right decisions. Sadly, though, I think most of the adults that we sentence are before us because they too have failed to make the right decisions at the right time. They made a bad choice, and that's why they are before us. You made a bad choice, and that's why you're before me as well.
>
> I have taken into consideration these other factors, but in the end, I am absolutely of the belief that even though there may be some mitigation against the mandatory minimum sentence, this Court absolutely believes that a minimum sentence is required.

Liddick notes the court recognized his "deficiencies in controlling impetuous behavior, decision-making, and problem-solving." However, Liddick argues the sentencing court did not give the required mitigating effect to these deficiencies and did not give enough weight to parental neglect and inadequate supervision. Liddick asserts, "The district court essentially viewed [his] actions as though he were a normal adult as opposed to a youth with underdeveloped abilities to maintain control of his emotions and make good decisions."

Our reading of the court's reasoning does not support Liddick's characterization. Rather, the court did consider the relevant factors and the goal, which is "to craft a 'punishment that serves the best interests of the child and of society.'" *Roby*, 897 N.W.2d at 144 (citation omitted). The court followed the outlined sentencing procedure by conducting an individualized hearing, applied the appropriate factors, and imposed a sentence authorized by statute and supported by the evidence. *See Majors*, 940 N.W.2d at 387 ("But if the court follows our outlined sentencing procedure by conducting an individualized hearing, applies the *Miller/Lyle/Roby* factors, and imposes a sentence authorized by statute and supported by the evidence, then we affirm the sentence."). We discern no abuse of discretion in the court's imposition of a mandatory minimum sentence.

## IV. Fine.

"The court may correct an illegal sentence at any time." Iowa R. Crim. P. 2.24(5)(a)). Attempted murder is a class "B" felony. *See* Iowa Code § 707.11(2) (2019). A class "B" felony is punishable by up to twenty-five years in prison, but there is no fine associated with it. *See id.* § 902.9(1)(b). The State agrees with Liddick there is no statutory authority supporting the fine. We therefore vacate that portion of the sentence requiring him to pay a fine. *See State v. Ross*, 729 N.W.2d 806, 809 (Iowa 2007) ("[T]he unauthorized fines imposed as part of the defendant's sentences must be vacated."); *accord State v. Vandermark*, ___ N.W.2d ___, ___, 2021 WL 4928418, at *5 (Iowa 2021). We remand for a corrected sentencing order.

**SENTENCE VACATED IN PART AND REMANDED WITH DIRECTION.**